*678
 
 BALDOCK, Circuit Judge.
 

 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.
 
 See
 
 Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8(c). The case, therefore, is submitted without oral argument.
 

 This is an appeal from the district court’s affirmance of a final order of the bankruptcy court dismissing the complaint filed by First Bank of Colorado Springs (bank). The bank filed the complaint pursuant to 11 U.S.C. § 523(a)(2)
 
 [1]
 
 , objecting to the discharge of appellee Mullet’s debt to the bank. The bankruptcy court held that any reliance by the bank upon Mullet’s allegedly false representations in granting the loan was unreasonable and that the debt was thus dischargeable. The district court affirmed the bankruptcy court’s decision. We also affirm.
 

 In October of 1982 Mullet, then 23 years old, met with a commercial loan officer at the bank. Mullet represented that he was new in Colorado Springs and that he was establishing a new business there. Mullet requested an $86,000 loan to obtain a computer for use in his business. The bank granted the loan to Mullet. Mullet, however, made only one interest payment on the loan and defaulted. He later filed his petition in bankruptcy.
 

 The bank filed the complaint in this case pursuant to § 523(a)(2) to prevent the discharge of the loan debt through Mullet’s bankruptcy. The bank alleged that the loan had been obtained “by means of a materially false writing and actual fraud.” Rec. vol. I at 44. The bankruptcy court held a hearing pertaining to the discharge-ability of the debt. At the conclusion of the evidence presented by the bank, Mullet moved to dismiss the complaint on the basis that the bank did not present sufficient evidence to demonstrate that it reasonably relied upon the allegedly false documents or representations.
 

 The bankruptcy court first noted that the standard of reliance under § 523(a)(2)(A) is subjective, and “[i]f the reliance is so unreasonable under the circumstances, then it does not constitute reliance at all.” Rec. vol. Ill at 72. The bankruptcy court then concluded that the bank “has failed to establish that there was any kind of reliance at all on either the financial statement or on the stock certificate,” and that the debt was dischargeable. Rec. vol. II at 75.
 

 The bank appealed the discharge of the debt to the district court. The district court affirmed, holding that reliance under both § 523(a)(2)(A) and (B) must be reasonable to prevent discharge of the debt and that the bankruptcy court’s conclusion that the bank’s reliance was unreasonable was not clearly erroneous. Rec. vol. II at 16-18. The bank then appealed to this court pursuant to 28 U.S.C. § 158(d).
 

 In reviewing the decision of the bankruptcy court, “the district court as well as the court of appeals must accept the factual findings of the bankruptcy court unless they are clearly erroneous.”
 
 In re Branding Iron Motel, Inc.,
 
 798 F.2d 396, 399 (10th Cir.1986).
 
 See
 
 Bankr.R. 8013;
 
 In re Yeates,
 
 807 F.2d 874, 876-77 (10th Cir.1986).
 
 See also Anderson v. Bessemer City,
 
 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Because a determination as to the dischargeability of a debt is a core proceeding under 28
 
 *679
 
 U.S.C. § 157(b)(2)(I), the application of the clearly erroneous standard to the bankruptcy court’s factual findings is consistent with the Constitution, and
 
 Northern Pipeline Construction Co. v. Marathon Pipe Une Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), does not require the district court to conduct a
 
 de novo
 
 review of the bankruptcy court’s decision.
 
 Yeates,
 
 807 F.2d at 877, n.
 
 2; Branding Iron,
 
 798 F.2d at 399 n. 3;
 
 In re Reid, 151
 
 F.2d 230, 233-34 n. 5 (10th Cir.1985). However, both the court of appeals and the district court are to review the bankruptcy court's legal determinations
 
 de novo. Yeates,
 
 807 F.2d at 877;
 
 Branding Iron,
 
 798 F.2d at 399-400.
 

 The bank first contends that the bankruptcy court erred in requiring that the bank’s reliance upon Mullet’s representations be reasonable in order to block the discharge. The bank argues that, while § 523(a)(2)(B) requires reasonable reliance on the written statement, § 523(a)(2)(A) imposes no reasonableness standard on the reliance concerning Mullet’s false representations that were not in writing. We disagree.
 

 Section 523(a)(2) is the successor to § 17(a)(2)
 
 [2]
 
 of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), and it only slightly modified § 17(a)(2). S.Rep. No. 95-989,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad. News 5787, 5864. “Cases interpreting section 17(a)(2) developed two judicial glosses. First, because direct proof of actual reliance is difficult, actual reliance may be proven by circumstantial evidence of reliance. Second, actual reliance must be reasonable.”
 
 In re Kreps,
 
 700 F.2d 372, 375 (7th Cir.1983) (citations omitted). Section 17(a)(2) thus required a finding that the creditor actually relied upon the false representations, “[a]nd of course such reliance must be reasonable.”
 
 Carini v. Matera,
 
 592 F.2d 378, 381 (7th Cir.1979) (dealing with false representations other than written statements regarding financial condition).
 

 We conclude that this standard of reasonableness required under § 17(a)(2) should continue to be imposed on claimed reliance pertaining to § 523(a)(2)(A). Other courts of appeals have also concluded that reliance under § 523(a)(2)(A) must be reasonable.
 
 See In re Hunter,
 
 780 F.2d 1577, 1579 (11th Cir.1986);
 
 In re Kimzey,
 
 761 F.2d 421, 423 (7th Cir.1985). This standard of reasonableness places a measure of responsibility upon a creditor to ensure that there exists some basis for relying upon the debtor’s representations. Of course, the reasonableness of a creditor’s reliance will be evaluated according to the particular facts and circumstances present in a given case.
 

 The loan officer in charge of Mullet’s loan testified that he relied on Mullet’s written financial statement in granting the loan. Rec. vol. Ill at 50-51. This reliance is covered by § 523(a)(2)(B), which contains an express requirement that the reliance be reasonable. The loan officer also stated that he relied on oral representations made by Mullet, specifically that the stock pledged as collateral was listed on the New York Stock Exchange. Rec. vol. Ill at 11-12, 23-24. This reliance is covered by § 523(a)(2)(A) and, as noted above, also must be reasonable. Thus, the bankruptcy court properly required that the bank’s reliance upon Mullet’s representations be reasonable in order to prevent discharge pursuant to § 523(a)(2).
 

 The bank next asserts that, even if reasonableness is required to prevent discharge of a debt, such requirement is outweighed by Mullet’s deceit. The bank essentially requests us to adopt an approach whereby the debtor’s dishonesty is weighed
 
 *680
 
 against the unreasonableness of the creditor’s reliance. We decline.
 

 “Exceptions to discharge are construed narrowly, and the burden of proving that a debt falls within a statutory exception is on the party opposing discharge.”
 
 In re Black,
 
 787 F.2d 503, 505 (10th Cir.1986). The bank must thus prove each element necessary to prevent discharge pursuant to § 523(a)(2)(A): the debtor made a false representation or willful misrepresentation; the representation was made with the intent to deceive the creditor; the creditor relied on the representation; the creditor’s reliance was reasonable; and the creditor sustained a loss as a result of the debtor’s representation.
 
 Hunter,
 
 780 F.2d at 1579;
 
 Kimzey,
 
 761 F.2d at 423. Because the bank must prove both false representation and reasonable reliance, there is simply no need to weigh these factors against each other. An exceptionally strong showing that a debtor has made false representations will not excuse a creditor’s failure to demonstrate reasonable reliance on those representations. Moreover, to the extent consideration of the degree of the debtor’s dishonesty is deemed necessary, such consideration is adequately taken into account in determining the existence of each of the elements outlined above.
 

 The bank also contends that, even if reasonable reliance is required as an independent element under both parts of § 523(a)(2), the bank has made a prima facie case of such reasonable reliance. We disagree.
 

 As noted earlier, Mullet, who was 23 years old at the time, came into the bank and requested an $86,000 loan. The bank asked for and obtained an unaudited financial statement from Mullet. Rec. vol. Ill at 10, plaintiff’s Ex. 1. The bank also obtained a credit report on Mullet, which indicated that he was current on several loans and credit accounts. Rec. vol. Ill at 10, defendant’s Ex. C. Although several outstanding loans which Mullet had not disclosed on his financial statement appeared on the credit report, the bank did nothing to investigate the reasons for the discrepancies between the financial statement and credit report. Rec. vol. Ill at 47-49.
 

 The loan officer in charge of the loan to Mullet testified that the bank, in' making the loan to Mullet, relied on parts of the financial statement as it pertained to sources of repaying the loan. Rec. vol. Ill at 50-51. Specifically, the loan officer testified that the bank was relying on Mullet’s representation that he had a $130,000 certificate of deposit in a Swiss bank which could be used to repay the loan. Rec. vol. Ill at 35-37, 50-51. The financial statement offered by Mullet, while showing “cash on hand and in banks” of $134,000, made no express mention of the Swiss certificate of deposit. Rec. vol. Ill at 51-52; Plaintiff’s Ex. 1. Furthermore, the bank did absolutely nothing to confirm the existence of the certificate of deposit. Rec. vol. Ill at 35-36. Rather, the loan officer noted that Mullet “had a heavy Swiss accent.
 
 [3]
 
 He had purported to live in Switzerland for a number of years — most of his life.” Rec. vol. Ill at 35.
 

 The loan officer also stated that the bank was relying on stock owned by Mullet as security for the loan. Rec. vol. Ill at 11-12, 23-24. Mullet referred to the stock as “Interco, Inc.” stock and represented to the loan officer that the stock was traded on the New York Stock Exchange. Rec. vol. Ill at 12. The officer testified that he would not have considered making the loan to Mullet if the stock was not listed on the New York Stock Exchange. Rec. vol. Ill at 24. In verifying the presence of the stock on the New York Stock Exchange and its value, another individual in the bank “checked with the Wall Street Journal for that symbol [Interco], and since that was a couple days old, I think she called a broker for a quote.” Rec. vol. Ill at 17. Apparently, however, no one from the bank verified that the Interco was listed on the New York Stock Exchange was the same Interco in which Mullet owned stock.
 

 
 *681
 
 The certificate of stock assigned to the bank as security for the loan reflected Mullet’s ownership in Intercontinental Systems Corporation. Plaintiff’s Ex. 8. This company, referred to by Mullet as Interco, was not the same Interco that was listed on the New York Stock Exchange. Rec. vol. Ill at 33. However, the bank never “sen[t] this stock out to anybody to verify whether or not it was publicly traded.” Rec. vol. Ill at 55. Furthermore, the loan officer had no knowledge of anyone at the bank taking any action to determine if the stock was valid and actually issued to Mullet. Rec. vol. III at 52-53, 59-60.
 

 We note that in some cases, the courts have held that reliance upon representations of the debtor is not unreasonable simply because the creditor failed to take steps to verify the information.
 
 See, e.g., Carini,
 
 592 F.2d at 381;
 
 Matter of Garman,
 
 643 F.2d 1252, 1259-60 (7th Cir.1980),
 
 cert. denied,
 
 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). However, those cases are distinguishable in that they involved ongoing relationships between the debtor and creditor
 
 (Carini
 
 and
 
 Garman),
 
 the statements contained no information indicating that further investigation was required
 
 (Garman),
 
 there was no indication that further investigation would have uncovered the falsity of the representations (Garman), or the asserted failure to verify occurred
 
 after
 
 the loan had been made
 
 (Carini).
 
 In the present case, Mullet was a new, young, unproven customer of the bank, there were inconsistencies in his representations, minimal investigation and verification almost certainly would have uncovered the falsity of the representations, and the lack of verification cited to by Mullet occurred prior to the granting of the loan. We thus conclude that the bankruptcy court’s finding of no reasonable reliance on the part of the bank is not clearly erroneous.
 

 The bank also alleges error by contending that the bankruptcy court substituted its business judgment for that of the bank’s rather than focusing on the bank’s actual reliance on Mullet’s representations. The bank cites to
 
 Matter of Garman,
 
 643 F.2d at 1258, for the proposition that
 

 it is not the court’s duty under § 17(a)(2) to second guess a creditor’s decision to make a loan or to set loan policy for the creditor.... The creditor need establish only its reliance in fact, although its claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact. Given this reliance, the court, with the benefit of hindsight, should not base its decision regarding discharge on whether
 
 it
 
 would have extended the loan,
 

 (emphasis in original). While we agree that the court should not, in hindsight, substitute its business judgment for that of the creditor, such is not the case here.
 

 In
 
 Garman,
 
 the court noted that the bankruptcy and district courts focused on whether the decision to loan the debtor the money was reasonable, rather than whether the reliance on the debtor’s statements was reasonable.
 
 Id.
 
 at 1257. The lower courts were concerned that the creditor based its decision to loan on the net worth and nature of the assets of the debtor rather than on income.
 
 Id.
 
 at 1258.
 

 In the present case, the bankruptcy court did not hold that, even if Mullet’s representations were true, it would not grant the loan or that the loan procedures of the bank were faulty. Rather, the court carefully went through the representations regarding the financial statement, the Swiss certificate of deposit, and the stock certificate. Rec. vol. Ill at 71-75. The bankruptcy court then expressly concluded that it found no reliance on the part of the bank on either the financial statement or the stock certificate. Rec. vol. Ill at 75. The bankruptcy court finally stated that the granting of a loan under these circumstances was very reckless. Rec. vol. Ill at 75. Contrary to the bank’s assertions, however, this final statement does not constitute a holding substituting the court’s business judgment for that of the bank. It is simply a gratuitous statement based upon the court’s earlier holding that the bank did not reasonably rely on Mullet’s representations. The court properly evaluated the reasonableness of the bank’s reliance and did not, as in
 
 Garman,
 
 evaluate instead the
 
 *682
 
 reasonableness of the business decision to make the loan.
 

 The bank finally asserts that Mullet, because of his allegedly dishonest behavior, should not be allowed to use the bankruptcy mechanism to discharge his debts. The bank argues that the bankruptcy act “was meant to discharge only the honest debtor from his debts.”
 
 Garman,
 
 643 F.2d at 1256. While we certainly do not wish to encourage the type of behavior attributed to Mullet by the bank, we must reiterate that a showing of the debtor’s dishonesty is simply not sufficient to prevent discharge under § 523(a)(2). As noted, the creditor bears the burden of proving the various elements to prevent a discharge of the debt. The bank in this case has failed to carry its burden on one of the elements: the reasonableness of its reliance. We must therefore allow the discharge of Mullet’s debt, even in the face of his allegedly dishonest conduct.
 

 AFFIRMED.
 

 [1]
 

 . 11 U.S.C. § 523(a) provides in pertinent part: (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
 

 [[Image here]]
 

 (2) for obtaining money, property, services, or any extension, renewal, or refinance of credit, by—
 

 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition: or
 

 (B) use of a statement in writing—
 

 (i) that is materially false;
 

 (ii) respecting the debtor’s or an insider's financial condition;
 

 (iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and
 

 (iv) that the debtor caused to be made or published with intent to deceive.
 

 [2]
 

 .
 
 Section 17(a) provided in pertinent part:
 

 A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ...
 

 (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another.
 

 [3]
 

 . In light of the fact that the official languages of Switzerland are German, French, Italian, and Romansh,
 
 The World Almanac and Book of Facts, 1986,
 
 at 604, we are somewhat at a loss as to the witness' perception that Mullet had a "Swiss" accent.