**In re Ronald Ellwood WATSON, and Terri Louise Watson, Debtors.**

**LEADERSHIP BANK, N.A., a National Banking Association, Plaintiff,**

**v.**

**Ronald E. WATSON, an individual, Defendant.**

**No. CIV–91–24–W.**

United States District Court, W.D. Oklahoma.

April 24, 1991.

---

Kenneth G. Mayfield, Oklahoma City, Okl., Ben T. Benedum, Benedum Benedum & Parsons, Norman, Okl., for debtors.

James M. Chaney, Kirk & Chaney, Oklahoma City, Okl., for plaintiff.

## ORDER

LEE R. WEST, District Judge.

This appeal from the United States Bankruptcy Court for the Western District of Oklahoma involves the nondischargeability of a loan under title 11, section 523(a)(2)(B) of the United States Code. The issue is whether appellee, Leadership Bank, N.A. (Leadership/the Bank), reasonably relied, if at all, upon the written financial statement given by appellant Ron Watson, the debtor, at the time the loan was negotiated.

■ To establish that the instant debt is nondischargeable under section 523(a)(2)(B), Leadership as creditor has to prove by clear and convincing evidence

(1) that the loan was obtained by Watson by use of a materially false written financial statement, made with the intent to deceive and

(2) on which Leadership reasonably relied.

Initially, the Bankruptcy Court found that Leadership had proven element (1) but not element (2). The Bankruptcy Court determined that Leadership had not relied upon Watson's written financial statement and further stated that it was unlikely that Leadership would have made an unsecured loan to a new customer. It was only after reconsideration of the matter that the Bankruptcy Court found that Leadership had proven by clear and convincing evidence that the Bank had relied on the statement.

■ On appeal, Watson has challenged only the Bankruptcy Court's finding that Leadership has proven element (2). In examining Watson's arguments, the Court is mindful that the issue on appeal is a factual issue and that the Court is therefore bound by the finding of the Bankruptcy Court unless that finding is clearly erroneous. The Court is further mindful that it is not permitted to overturn a decision under this standard because it might have decided the case differently. Reversal is required only when there is no factual support in the record for the decision rendered.

Watson, the assistant athletic director for the University of Oklahoma (OU), was referred to Leadership by Jackie Cooper. Cooper was a local car dealer who furnished courtesy cars to members of the OU

athletic department. He was also a customer of the Bank.[1]

On May 11, 1989, Watson met with Richard Pralle, president and chief executive officer of the Bank, to obtain an unsecured $10,000.00 loan,[2] which ultimately was not repaid. Watson, at Pralle's request, completed a financial statement.

Watson testified that while he was completing the financial statement, Pralle left the room and when he returned, he (Pralle) had a check which he gave to Watson. Watson did not sign or date the financial statement and he testified that while there was a discussion about the purpose for the loan there was no discussion about the information contained on the statement prior to or after Pralle gave him the check.

Pralle, on the other hand, testified that he discussed with Watson the availability of collateral, the sources of repayment and the purpose for the loan. Pralle testified further that he also discussed the information on the financial statement with Watson prior to obtaining the check but that he did not realize that the statement was unsigned or undated. The document itself bears a handwritten notation by Pralle.

Pralle admitted leaving the room while Watson completed the financial statement. He testified that the discussions regarding the financial statement occurred after he returned and that he left the room a second time to obtain the check.

█ As stated, reversal should occur only if there is no factual basis in the record for the Bankruptcy Court's findings. In this case, there is a factual basis—Pralle's testimony—for the Bankruptcy Court's decision that Leadership met its burden of proving reliance on the written statement.

The Court must decide whether such reliance is reasonable. The United States Court of Appeals for the Tenth Circuit in addressing the standard of reasonableness to be applied, stated that section 523(a)(2)(B),

"places a measure of responsibility upon a creditor to ensure that there exists some basis for relying upon the debtor's representations. Of course, the reasonableness of a creditor's reliance will be evaluated according to the particular facts and circumstances present in a given case."

*In re Mullet*, 817 F.2d 677, 679 (10th Cir. 1987).

Leadership has admitted that it performed no independent verification of Watson's financial status and the Bankruptcy Court's finding that it was not Leadership's practice to make unsecured loans to new customers is supported by the record. Despite these facts, the Court finds that reliance alone on Watson's financial statement is sufficient and reasonable under the particular facts and circumstances present in this case.

A lender is required to investigate only unusual matters, so-called "red flags," about which a reasonably prudent lender would inquire. It was not the practice of the Bank to obtain credit reports on new customers for small loans and while it was unlikely that Leadership made unsecured loans to new customers, the practice was not prohibited. There is no evidence that the false financial statement, which indicated the amount of Watson's salary as well as his assets and liabilities, was facially incomplete or inaccurate (save for his signature and the date). Thus, there were no "red flags" in this case which would have triggered an independent investigation by Leadership into Watson's creditworthiness.

Accordingly, the Court finds that the Bankruptcy Court's Judgment filed October 3, 1990, is AFFIRMED. Such finding renders MOOT Watson's request to vacate Leadership's award of attorney fees.

---

1. At some point, Cooper agreed to execute a guaranty agreement in favor of Leadership.

2. The loan was in the total amount of $10,-035.00. The $35.00 represents a loan origination fee.