956 F.2d 279
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 In re Ronald E. WATSON and Terri Louise Watson, Debtors.
SECURITY NATIONAL BANK AND TRUST OF NORMAN, OKLAHOMA, Appellee,
v.
Ronald E. WATSON, Appellant.
 No. 91-6221.
 United States Court of Appeals, Tenth Circuit.
 Feb. 18, 1992.
 
 Before JOHN P. MOORE, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of the appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Ronald E. Watson (Debtor) appeals the district court's decision affirming the bankruptcy court's determination that Debtor's loan obligation owed to Security National Bank and Trust (Bank) was nondischargeable under 11 U.S.C. § 523(a)(2)(B). Section 523 provides that a debt will not be discharged in bankruptcy if that debt is
 
 
 3
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
 
 
 4
 ....
 
 
 5
 (B) use of a statement in writing--
 
 
 6
 (i) that is materially false;
 
 
 7
 (ii) respecting the debtor's ... financial condition;
 
 
 8
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 
 
 9
 (iv) that the debtor caused to be made or published with intent to deceive....
 
 
 10
 11 U.S.C. § 523(a)(2)(B). The sole issue presented on appeal is whether the Bank's reliance on Debtor's two false financial statements in lending Debtor $28,000 was reasonable.
 
 
 11
 The question of whether the Bank's reliance was reasonable is a factual determination of the bankruptcy court which this court will disturb only if clearly erroneous. See First Bank v. Mullet (In re Mullet), 817 F.2d 677, 681 (10th Cir.1987). Upon careful consideration of the parties' arguments and the record on appeal, we affirm the bankruptcy and district courts' determination that the Bank's reliance on Debtor's false financial statements was reasonable.[1]
 
 
 12
 The bankruptcy court found, and the record supports, the following: Debtor accepted a position as assistant athletic director at the University of Oklahoma in April 1988. One of the members of the University's athletic department, who was a well-respected customer of the Bank, referred Debtor to the Bank. Debtor opened an account with the Bank in June 1988. On the same day he opened the account, Debtor spoke to a Bank official concerning the possibility of obtaining a loan for general household repairs and improvements. The Bank official approved a loan of $3,000 that same day, without requesting a financial statement and without obtaining a credit report.
 
 
 13
 Later that same month, Debtor obtained a second loan from the Bank, which renewed the first loan and included an additional $3,000 for home repairs and his daughter's college tuition. Again the Bank did not obtain a completed financial statement from Debtor nor did the Bank obtain a credit report.
 
 
 14
 On August 3, 1988, Debtor sought from the Bank a new loan of $10,000, which included the renewal of the previous $6,000 loan as well as an additional $4,000. This time the Bank requested and obtained from Debtor a completed financial statement. Debtor indicated on the financial statement that he had an annual salary of $55,000 and current debts of $700. At that time, Debtor actually had approximately $45,000 in debts.
 
 
 15
 Before approving the $10,000 loan, the Bank also obtained a credit report. That report, which was in error, corroborated Debtor's false financial statement by reflecting current liabilities of only $698. Based on a comparison of the financial statement and the credit report, which were almost identical, as well as the favorable ratio of debts, $700, to income, $55,000, as indicated on the financial report, the Bank loaned Debtor $10,000.
 
 
 16
 In October 1988, Debtor obtained another loan from the Bank, this time in the amount of $15,000, which represented the renewal of the previous $10,000 loan, plus an additional $5,000, again for his daughter's college tuition. The Bank did not deem an updated financial statement necessary, in light of the Bank's policy of requiring updated financial statements only every thirteen months. During an October meeting with a Bank official, Debtor indicated that he would soon inherit a significant sum of money, from which he intended to repay the loan.
 
 
 17
 Debtor sought a fifth loan in December 1988, this time in the amount of $18,000, which again reflected the renewal of the previous $15,000 loan plus an additional loan of $3,000. The Bank extended the $18,000 loan to Debtor, making the note due in January 1989. Debtor was unable to make the January payment, but in February he made a payment on the accruing interest. In light of that interest payment, the Bank deferred payment of the note to June 1989. Debtor did not make the June payment either, but again made an interest payment.
 
 
 18
 In August 1989, Debtor obtained a final loan from the Bank for $28,000, which renewed the previous $18,000 loan and included an additional $10,000 for his daughter's college tuition. Before making this new loan, the Bank obtained an updated financial statement from Debtor. On the updated financial statement, Debtor claimed as a liability only the $18,000 he then owed the Bank, plus a debt owed to a third party in the amount of $2,500. At that time, however, Debtor actually had current liabilities in excess of $65,000. The Bank did not obtain another credit report at that time because Debtor's updated financial statement did not reveal any material changes in his financial condition.
 
 
 19
 This final $28,000 loan was payable December 1, 1989. Debtor was unable to make that payment. He and his wife filed for bankruptcy December 20, 1989.
 
 
 20
 In challenging the bankruptcy court's determination that the $28,000 loan obligation is nondischargeable, Debtor asserts that the Bank's reliance upon the two false financial statements was unreasonable. "[The] standard of reasonableness places a measure of responsibility upon a creditor to ensure that there exists some basis for relying upon the debtor's representations.... [T]he reasonableness of a creditor's reliance will be evaluated according to the particular facts and circumstances present in a given case." In re Mullett, 817 F.2d at 679.
 
 
 21
 In addition to requesting the two financial statements, the Bank also obtained a credit report, which erroneously corroborated the false financial statements. The credit report's corroboration of the financial statements provided a reasonable basis for the Bank's reliance upon those statements in making the loans to Debtor. Cf. id. at 680 (bank's reliance on financial statement, without further investigation, was not reasonable when, among other things, credit report indicated several outstanding loans which debtor had not disclosed on financial statement). Further, the Bank's failure to obtain another credit report, after receiving the updated financial statement, was not unreasonable because the information contained in the second financial statement remained materially consistent with the first statement and with the prior credit report.
 
 
 22
 Debtor argues, however, that additional "red flags" existed which required the Bank to conduct further investigation in order to verify the information Debtor had included in the financial statements. According to Debtor, the Bank should have been alerted to the need for further investigation because of the sloppiness with which Debtor completed the financial statement forms, the apparent incompleteness of the credit report, which failed to indicate any existing debt incurred by Debtor in Louisiana, where he had lived up until three months before he obtained the first loan from the Bank, and the obvious financial difficulties Debtor was experiencing. Debtor asserts that, in light of these "red flags," the Bank's reliance upon Debtor's financial statements, without any independent investigation of the information contained in those statements, was unreasonable.
 
 
 23
 The issue of reasonableness presented under § 523(a)(2)(B) is not whether it was reasonable for the Bank to have loaned Debtor $28,000, but whether it was reasonable for the Bank to have relied upon Debtor's financial statements in making that loan. See In re Mullet, 817 F.2d at 681-82. Review of Debtor's financial statements fails to indicate that they were so obviously incomplete and sloppy as to alert the Bank that further investigation was required. Rather, on their face, they appeared materially complete and accurate. See Hoffman & Kuhn, Inc. v. Branham (In re Branham), 126 B.R. 283, 292 (Bankr.S.D.Ohio 1991) ("[I]t is reasonable for a creditor to assume that the financial statement is accurate when it is complete and contains no apparent inconsistencies.").
 
 
 24
 The credit report was also no obviously deficient. The report indicated an outstanding debt owed to a national lending institution and, thus, was not completely devoid of any debt. Further, the precision with which the credit report corroborated Debtor's financial statements sufficiently allayed any possible concerns raised by these documents.
 
 
 25
 Lastly, Debtor's continued need for money was not sufficient, in light of the specific circumstances of this case, to place the Bank on notice that further investigation was required. Cf. Oppenheimer v. Reder (In re Reder), 60 B.R. 529, 531-32, 538 (Bankr.D.Minn.1986) (noncommercial lender's reliance on false financial statement, without further investigation, was unreasonable in light of debtor's continued financial need, when debtor borrowed approximately $92,000 from creditor through series of nine loans over five-month period, after initial loan of $35,000).
 
 
 26
 The Bank's reliance upon Debtor's false financial statements, therefore, was reasonable. The judgment of the United States District Court for the Western District of Oklahoma affirming the nondischargeability of Debtor's obligation to the Bank is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The bankruptcy court required the Bank to establish the nondischargeability of Debtor's obligation by clear and convincing evidence. Following the bankruptcy court's decision, the United States Supreme Court determined that a creditor need only establish the nondischargeability of a debt under 11 U.S.C. § 523 by a preponderance of the evidence. Grogan v. Garner, 111 S.Ct. 654, 661 (1991). Because the Bank met its burden under either standard, Grogan does not affect the resolution of this appeal