In re James M. ENIS and Robin L. Enis, Debtors.

ITT FINANCIAL SERVICES, Plaintiff,

v.

James M. ENIS and Robin L. Enis, Defendants.

Bankruptcy No. 91–33163.

Adv. No. 91–3511.

United States Bankruptcy Court, N.D. Ohio, W.D.

Nov. 5, 1992.

John C. Intagliata, Toledo, OH, for plaintiff.

L. Mari Taoka, Toledo, OH, for debtors/defendants.

## OPINION AND ORDER DISCHARGING DEBT, DISMISSING COMPLAINT AND DIRECTING DEBTORS/DEFENDANTS TO FILE AN AFFIDAVIT

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for trial upon plaintiff's complaint to determine dischargeability of debt and/or objecting to discharge. Upon consideration of the evidence adduced at trial and the oral arguments of the parties, the court finds that said debt should be discharged, that plaintiff's complaint should be dismissed and that Debtors/defendants should file an affidavit reflecting the costs of, and a reasonable attorney's fee for, this proceeding.

### FACTS

On July 31, 1991, Debtors/defendants filed their voluntary petition under chapter 7 of title 11. Thereafter, on November 22, 1991, plaintiff, ITT Financial Services, filed the instant complaint to determine dischargeability of debt and/or objecting to discharge, alleging that defendants ob-

tained credit from plaintiff by false pretenses or fraud. Defendants, on or about November 27, 1989, executed a promissory note in favor of plaintiff. Plaintiff asserts that defendants pledged previously encumbered collateral to secure this loan, a big screen TV and VCR, and that defendants overvalued other collateral pledged to secure that loan, a saxophone and miscellaneous tools. Thus, plaintiff requests that the debt due it be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2).

Defendants, James and Robin Enis, testified that they had received a certificate from plaintiff in the mail inviting them to apply for a loan. Defendants went to a branch office to apply for the loan proceeds. Defendants testified that they informed plaintiff's representative, at the time of the loan, that certain personalty, a big screen TV and VCR, had been purchased with funds from Fifth Third Bank. According to defendants, they informed plaintiff's representative that the saxophone belonged to their daughter. Additionally, defendants asserted that plaintiff's representative, at the time of the loan, provided the value for the saxophone and erroneously valued the tools. Defendants understood, at the time of the loan, that it was not necessary that collateral be pledged; the loan representative needed this information in order to complete the documents. Defendants stated that they received the monies the same evening that they applied for them. Defendants assert that plaintiff has suffered no damage.

Mr. Donald Meadows, employed as a bankruptcy representative by plaintiff, testified that his duties include receiving new bankruptcy filings, obtaining the necessary documents from various branches of plaintiff, and attending § 341 meetings in order to evaluate the recovery of assets from Debtors. He further indicated that he had previously held several positions with plaintiff, including that of making loans to customers. Mr. Meadows explained that the normal procedure followed in making a loan includes permitting the customer to value his collateral, verifying this valuation pursuant to established guidelines, and reviewing the loan documents with the customer, informing them of the charges and payments. The representative then types the information on the loan documents and affords the customer an opportunity to review the information, making appropriate corrections. Mr. Meadows did not, however, participate in the loan procedure followed with regard to defendants and he could not guaranty that the loan procedure varied from that established by plaintiff's policies.

Mr. Meadows stated that he questioned the defendants at their § 341 meeting and was informed that the TV and VCR had been purchased through a purchase plan with Fifth Third Bank. Upon review of defendants' file, Mr. Meadows testified that a credit report was requested regarding defendants on or about the date of the application. Mr. Meadows could not verify the date that credit report was available, it was obtained within the 30 day period between November, 1989 and December, 1989; he assumed it was obtained prior to funds being released to defendants.

## DISCUSSION

■ Section 523(a)(2)(A) upon which plaintiff seeks to have the debt due it excepted from discharge provides:

> (a) a discharge under section 727 ... of this title does not discharge an individual Debtor from any debt—
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (2) *for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—*
>
> (A) false pretenses, a false representation, or actual fraud. . . .

Furthermore,

> [i]t is established that in order to except a debt from discharge under § 523(a)(2)(A) the creditor must prove that the Debtor obtained money through a material misrepresentation that at the time the Debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the Debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and

that its reliance was the proximate cause of loss.

*In re Phillips*, 804 F.2d 930, 932 (6th Cir. 1986) (citations omitted). *See also In re Hunter*, 780 F.2d 1577 (11th Cir.1986). The court finds that plaintiff has failed to establish any element of its cause of action.

■ Defendants credibly testified that they informed plaintiff's representative, at the time of the loan, that the TV and VCR were purchased with funds from the Fifth Third Bank. The court accepts this unrefuted testimony and finds that defendants made no misrepresentations. Additionally, defendants testified that they informed the representative that the saxophone belonged to their daughter and that the value of the tools was not $1,000. Although Mr. Meadows testified that plaintiff's policies provide for verification of information given the loan representative prior to release of the loan proceeds, Mr. Meadows did not participate in the loan process involving defendants. His testimony regarding the loan procedure is irrelevant to this case.

Additionally, the court finds that the second element, i.e. that defendants knew the misrepresentation was false, is not supported by the evidence. Because the court finds that no misrepresentations were made, same could not be false. Finding defendants' testimony to be convincing, plaintiff has failed to present any evidence establishing an intent to deceive.

Finally, plaintiff has failed to present evidence from which the court could find that it reasonably relied upon the information given it by defendants. Plaintiff presented no evidence regarding the loan procedure followed in extending funds to defendants. Although Mr. Meadows stated that a credit report was, normally, obtained prior to extension of funds, he could not definitively state that a report was available to plaintiff prior to the release of funds to defendants. The report to which Mr. Meadows referred contained no date and it was his opinion that it was obtained in November, 1989; it could have been available as late as December, 1989. Defendants, however, testified that they received the funds the same evening they applied. Obviously, no credit report could have been obtained that evening and, the court can find no reason for the report to have been available prior to defendants' application for the loan. As a result, plaintiff could not have relied upon the information given it by defendants; plaintiff made no attempt to verify the information.

■ Mr. Meadows testified, after referring to the credit report, that it reflected payments to the Fifth Third Bank. Because defendants informed the loan representative that they possessed a big screen TV, and because the credit report reflected payments to the Fifth Third Bank, plaintiff was on notice to inquire regarding any prior interest in that personalty. *See In re Ward*, 857 F.2d 1082, 1083 (6th Cir.1988) (the bankruptcy court decided that while the testimony of the bank officer in charge indicated that a credit check must have been made, indeed, the contrary must be true; a credit check could never have been made, because if it had been made credit would not have been issued). Exceptions to discharge are to be narrowly construed and plaintiff bears the burden of proving reasonable reliance by verifying or investigating the representations made by Debtors. *See Ward*, 857 F.2d at 1086 (a lender must investigate creditworthiness and ferret out ordinary credit information (citation omitted)); *In re Mullet*, 817 F.2d 677, 681 (10th Cir.1987) (we thus conclude that the bankruptcy court's finding of no reasonable reliance on the part of the bank is not clearly erroneous due to, among other factors, lack of verification prior to the granting of the loan).

The court also notes that plaintiff's disclosure statement, note and security agreement provides the following exclusion:

> secured party specifically excludes from this security agreement the following items on a loan for a personal family or household purpose, unless secured party has a purchase money security interest in the items: clothing, furniture (except antiques), appliances, one radio, one television, linens, crockery, china, kitchenware and personal effects. . . .

If any items listed under "c" above fall within the excluded items listed here and the secured party does not have a purchase money security interest in the item(s), then, this pre-printed language will supersede the items typed or written under "c" and secured party does not take a security interest in the excluded item.

Plaintiff's Exhibit 1. Items reflected in "c" include the saxophone, big screen TV and VCR. By its own documents, plaintiff cannot, now, claim an interest in defendants' TV; that item is specifically excluded since plaintiff did not have a purchase money security interest in it.

The record does not support, nor did plaintiff's counsel assert at trial, a cause of action under § 727 objecting to defendants' discharge. As a result, no consideration of this section is required.

 Having found that plaintiff has requested a determination of dischargeability of a consumer debt under § 523(a)(2), and that such debt is discharged, the court will grant defendants leave in which to file an appropriate affidavit reflecting the costs of, and a reasonable attorney's fee for, this proceeding, pursuant to § 523(d) as this court finds that plaintiff's position was not substantially justified. *In re Carmen*, 723 F.2d 16 (6th Cir.1983) (under § 523(d), Debtor is entitled to costs and a reasonable attorney's fee for dischargeability actions brought under § 523(a)(2) if the creditor initiates the proceeding and the debt is ultimately discharged; the only exception to the statutory directive is if the bankruptcy court determines that such an award would be clearly inequitable). In light of the foregoing, it is therefore

ORDERED that the debt due plaintiff ITT Financial Services from Debtors/defendants James M. Enis and Robin L. Enis be, and hereby is, discharged. It is further

ORDERED that plaintiff's complaint to determine dischargeability of debt and/or objecting to discharge be, and hereby is, dismissed. It is further

ORDERED that Debtors/defendants submit an affidavit, within ten days of the date of this opinion and order, for the costs of, and a reasonable attorney's fee for, this proceeding; plaintiff is granted ten days thereafter in which to object; absent any objection, judgment in the amount reflected in that affidavit will be granted in favor Debtors/defendants without further notice or hearing.