**In the Matter of Duskan SHULL, Debtor.**

**Glen SOUKUP, Plaintiff,**

v.

**Duskan SHULL, Defendant.**

**Bankruptcy No. BK97–40039.
Adversary No. A97–4035.**

United States Bankruptcy Court,
D. Nebraska.

March 31, 1998.

Vincent M. Powers, Lincoln, NE, for Plaintiff.

Mr. Robert Creager, Lincoln, NE, for Defendant.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This case is before the court to determine if a debt owed by the debtor, Duskan Shull, to the plaintiff, Glen Soukup, is excepted from discharge under section 523(a)(2)(A), or section 523(a)(4) of the Bankruptcy Code. I conclude that a debt in the amount of $100,000 is excepted from discharge.

### Law

Section 523(a)(2) excepts from discharge debts which arise from false pretenses, false representation, or actual fraud.[1] The United States Supreme Court in *Field v. Mans*, 516 U.S. 59, 71 n. 8, 116 S.Ct. 437, 444 n. 8, 133 L.Ed.2d 351 (1995) indicated that false pretenses, false representation, and actual fraud may be separate and distinct concepts. However, there is considerable blending of these concepts in reported decisional law, so it is difficult to distinguish between the elements of false pretenses, false representation, and actual fraud, except in generalities.

■ The elements of obtaining property by false pretense are: (1) a false representation or statement of a past or existing fact, (2) made by the debtor or someone instigated by the debtor, (3) made with the knowledge of its falsity, (4) made with the intent to deceive and defraud, (5) reliance on such false representation or statement, (6) an obtaining of something of value by the debtor or someone in his behalf, (7) without compensation of the person from whom it is obtained. *See* 35 C.J.S. *False Pretenses* § 6 (1960).

■ The elements of fraud have been described as: (1) the defendant made a material representation, (2) the representation was false, (3) that, when the defendant made the representation, he knew that it was false, or made it recklessly, without any knowledge of its truth, (4) that he made it with the intention that it should be acted on by the plaintiff, (5) that the plaintiff acted in reliance on it, and (6) that the plaintiff thereby suffered injury. *See* 37 C.J.S. *Fraud* § 7 (1997).

■ The elements of false representation are: (1) the individual made a false representation, (2) with fraudulent intent, (3) with the intent that the plaintiff rely on the misrepresentation, (4) the misrepresentation induces reliance, (5) the reliance is justifiable, and (6) the false representation causes damage. *See Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir.1997).

■ Under these general definitions, it is clear that in each case, an essential element of the claim is reliance. The wronged party must establish that it relied upon the fraud, misrepresentation, or false pretense.

Although section 523(a)(2)(A) does not explicitly require that a creditor rely in some fashion on the debtor's false pretense, false representation, or actual fraud, the Supreme Court has made clear that some form of reliance is necessary. The Court has held that in order for a debt arising from actual fraud to be non-dischargeable under section 523(a)(2)(A), the reliance by the creditor must be justifiable. *Field v. Mans*, 516 U.S. 59, 74, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995). The Court left open the question of whether a different standard of reliance is applicable for debts arising from false pretenses or false representation. *Id.* at 71 n. 8, 116 S.Ct. at 444 n. 8. Other forms of reliance include reliance in fact, and reasonable reliance. *See In re Ophaug*, 827 F.2d 340 (8th Cir.1987); *In re Burgess*, 955 F.2d 134 (1st Cir.1992); *In re Mullet*, 817 F.2d 677, (10th Cir.1987).

■ Section 523(a)(4) excepts from discharge debts arising from (1) fraud or de-

1. Section 523(a)(2)(A) reads: A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–(2) for money, property, services, or an extension, renewal, or refinancing of cred-
it, to the extent obtained by–(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

falcation while the debtor was acting in a fiduciary capacity; and (2) embezzlement or larceny whether or not acting in a fiduciary capacity.[2] Under federal bankruptcy law the required fiduciary capacity does not arise unless the debtor is a trustee of a technical or express trust, or the debtor acts in some comparable elevated, fiduciary capacity. *See In re Stentz*, 197 B.R. 966 (Bankr.D.Neb.1996).

### Findings of Fact and Discussion

In 1987, the defendant/debtor, Duskin Shull, became associated with Mr. Emeka Nnakwe who was completing his Ph.D studies at the University of Nebraska. Mr. Nnakwe testified that he formed a company called Deans Group of Co. Inc. ("Deans") for the purpose of investing in Nigerian crude oil. Mr. Shull and Mr. Nnakwe were directors of the company and they were the only two individuals associated with Deans. Mr. Shull was in charge of Deans' activities in the United States, where his job was to solicit investors and raise money to fund the purchase of oil contracts from the Nigerian National Petroleum Corporation (the "NNPC"). Mr. Nnakwe was in charge of Deans' activities in Nigeria. His duties included dealing directly with the NNPC in acquiring interests in Nigerian oil, and to make profits through arbitrage transactions. Mr. Shull represented to various investors that they would receive a return of double to five times their investment. Mr. Shull and Mr. Nnakwe obtained hundreds of thousands of dollars from parties in the United States for these investments, and all of the money was reported as lost.

The issues before the court are very narrow. Mr. Soukup commenced this adversary proceeding asserting that Mr. Shull induced him to invest $115,000 with Deans by false pretenses, false representation or actual fraud. Alternatively, Mr. Soukup asserts that Mr. Shull incurred this debt fraudulently while acting in a fiduciary capacity. Thus, Mr. Soukup asserts that Mr. Shull is liable, personally, to him for $115,000 and that this debt is excepted from discharge under sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code.

Mr. Shull asserts that he did not act in a fiduciary capacity with regard to Mr. Soukup's investments. He further asserts that he did not obtain the money from Mr. Soukup using false pretenses, false representation or actual fraud. Mr. Shull asserts that Mr. Soukup's investment was lost because of the acts of a third party over which neither he nor Mr. Nnakwe had control.

The pertinent facts are hotly disputed and my decision turns upon my conclusion as to the credibility of Mr. Soukup's and Mr. Shull's testimony. In short, I believe Mr. Soukup's version of the facts, I do not believe Mr. Shull.

Mr. Soukup was acquainted with Mr. Shull through Mr. Shull's father, a local chiropractor, and through Mr. Shull's wife, for whom Mr. Soukup had previously provided legal services. Mr. Soukup became aware that Mr. Shull was investing in Nigerian oil. After several conversations with Mr. Shull, Mr. Soukup made initial investments totaling $60,000 with Deans in February or March of 1989, but Mr. Soukup does not claim that this initial $60,000 is a debt excepted from discharge. In May of 1989, Mr. Shull told Mr. Soukup that another $100,000 investment was needed to complete the oil transaction and that the money previously invested by a number of investors, including Mr. Shull's father, would be lost unless this additional investment was made. Mr. Soukup was reluctant to advance any more funds. However, after several conversations with Mr. Shull he agreed to invest an additional $100,000 provided that certain conditions were met. Mr. Soukup borrowed $100,000 and transferred the money to Mr. Shull's control with the specific understanding that the money would remain in the United States under Mr. Shull's control, and that the funds would not be transferred from the United States to Nigeria unless: (1) Mr. Soukup gave his express consent, or (2) if Mr. Soukup could not be contacted when the funds were need-

**2.** Section 523(a)(4) reads: A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

ed, the funds could be transferred from Mr. Shull's control to Nigeria only if (i) Deans had obtained rights in an oil contract, (ii) the ship carrying the oil was loaded and in international waters, and (iii) the ship was under the exclusive control of Deans. Mr. Shull accepted the $100,000 from Mr. Soukup under the false pretense and with the false representation that he would comply with the conditions imposed by Mr. Soukup. At this time, Mr. Shull did not intend to comply with these conditions.

Mr. Shull ignored the conditions under which he obtained the $100,000 from Mr. Soukup, and he wire transferred the money to Mr. Nnakwe in Nigeria almost immediately upon its receipt. At the time Mr. Shull accepted the $100,000 from Mr. Soukup, Mr. Shull intended to wire transfer the funds to Nigeria without satisfaction of Mr. Soukup's conditions. At this time, Mr. Shull was aware of Mr. Nnakwe's activities in Nigeria, and Mr. Shull knew that Mr. Nnakwe needed the funds immediately. Mr. Shull was in contact with Mr. Nnakwe virtually daily by telephone.

I do not know specifically what happened once the money was transferred to Mr. Nnakwe in Nigeria. However, it is clear that the money was not held in the United States under the control of Mr. Shull.

In February of 1990, Mr. Soukup advanced another $15,000 to Mr. Shull. Mr. Shull traveled to Nigeria with these funds and gave them to Mr. Nnakwe. These funds were also lost. Mr. Soukup failed to prove facts establishing that this $15,000 advance constitutes a debt excepted from discharge.

The debtor denies that he agreed to hold Mr. Soukup's $100,000 in the United States. Mr. Shull asserts that he, Mr. Soukup, and Mr. Nnakwe had a telephone conversation in May of 1989, during which Mr. Soukup was told that his $100,000 would be held in an account in Nigeria under Mr. Nnakwe's control. I conclude that this telephone conversation did not take place.

Mr. Shull argues that even though Mr. Soukup's conditions for release of the money were never met, the reason that Mr. Soukup's money was lost was because of the actions of a third-party buyer of the oil who failed to advance funds. This argument is without merit. In a general sense, there are a myriad of reasons why the money was lost, and these include the fact that a third party buyer failed to make certain payment when due. However, the proximate cause of the loss was the failure by Mr. Shull to comply with Mr. Soukup's conditions. If Mr. Shull had satisfied Mr. Soukup's conditions, the funds would not have been lost in the Nigerian oil transaction because the funds would never have left the United States. The failure to comply with the conditions imposed by Mr. Soukup was the *sine qua non* of the loss. Furthermore, at the time Mr. Shull failed to comply with these conditions by transferring the funds to Nigeria, it was foreseeable that the money would be immediately invested by Mr. Nnakwe and that the money could be lost. This was particularly foreseeable by Mr. Shull given the fact that Mr. Nnakwe had previously lost funds sent to him in Nigeria.

In summary, I conclude that the plaintiff has proven, by a preponderance of the evidence, that Mr. Shull obtained $100,000 from Mr. Soukup under the false pretense and false representation that the money would be held in the United States until released by Mr. Soukup, or until certain conditions were met. Mr. Shull knew that the representation and pretense was false when made, because he intended to transfer the funds to Mr. Nnakwe immediately upon receipt. Mr. Shull intended to deceive Mr. Soukup, in that he knew that Mr. Soukup would not make the investment unless Mr. Soukup's conditions were met. Mr. Soukup knew Mr. Shull personally and had invested money with him previously. Mr. Soukup was aware that the debtor's father had a substantial amount of money invested in Nigerian oil transactions. Mr. Soukup knew that Mr. Shull was acquainted with Deans' operations in Nigeria, and knew that Mr. Shull was in frequent contact with Mr. Nnakwe. Mr. Soukup justifiably and reasonably relied on the debtor's representations and false pretenses. Mr. Shull did in fact receive the funds, and Mr. Soukup received no compensation for the investment. Therefore, Mr. Shull is liable to Mr. Soukup for the $100,000, and, because

the requirements of section 523(a)(2)(A) have been met, this debt is excepted from discharge and shall not be discharged by any discharge order entered in this bankruptcy case.

Section 523(a)(4) is not applicable because Mr. Shull was not acting with the required fiduciary capacity.

A separate order will be entered consistent herewith.

IT IS SO ORDERED,