**In re Roy CRIBBS, Debtor.**

**First National Bank, Plaintiff—Appellant,**

v.

**Roy Cribbs, Defendant—Appellee.**

**BAP No. WO–05–012.**
**Bankruptcy No. 04–12547–BH.**
**Adversary No. 04–01179–BH.**

United States Bankruptcy Appellate Panel for the Tenth Circuit.

June 24, 2005.

Thomas P. Manning, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, OK, Catherine L. Campbell, Phillips McFall McCaffrey McVay & Murrah, Oklahoma City, OK, Melvin R. McVay, Jr., Jennifer H. Kirkpatrick, Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, OK, for appellant.

G. Rudy Hiersche, Jr., Hiersche Law Firm, Oklahoma City, OK, for appellee.

Before CLARK, NUGENT, and McNIFF, Bankruptcy Judges.

## ORDER AND JUDGMENT *

MCNIFF, Bankruptcy Judge.

The parties did not request oral argument, and after examining the briefs and

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018–6(a).

appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

First National Bank (FNB) appeals a bankruptcy court judgment that a debt owed to FNB by Roy Cribbs (Debtor), the chapter 7 debtor, was dischargeable under 11 U.S.C. § 523(a)(2)(B). For the reasons stated, we AFFIRM.

## I. BACKGROUND

The Debtor, experienced in the construction business, was the president and majority shareholder of Purcell Assisted Living, Inc. (PALI). On behalf of PALI, and working with Everett Cox, a mortgage broker, the Debtor sought a lender to finance the construction of an assisted living center in Purcell, Oklahoma (Purcell Project).

The Debtor gave Cox a packet of information which included an April 1999 financial statement (April 1999 Statement). The April 1999 Statement was a joint personal financial statement of the Debtor and his wife. Seeking a loan for PALI, Cox submitted the packet and the April 1999 Statement to various lenders, including FNB. FNB denied the loan based on the Debtor's lack of liquid capital. The loan officer also suggested the Debtor acquire a partner to help with start-up costs.

In 2000, the Debtor obtained two investors for the PALI project, Cox and Terry Poole. The financial statements of Cox and Poole showed Poole had substantial net worth and both had significant liquidity.

Through Cox, PALI again approached FNB for a loan, which the Debtor and the two investors agreed to guaranty. In connection with the Debtor's guaranty, Cox faxed a joint personal financial statement of the Debtor and his wife to FNB. The statement indicated it was prepared in March 2000 (March 2000 Statement). However, on the last page, the March 2000 Statement was signed by the Debtor and witnessed by Cox in April 1999. The Debtor's spouse did not sign the March 2000 Statement, and the Debtor did not have legal assistance in drafting the March 2000 Statement.

FNB did not have the Debtor correct the inconsistent dates and did not ask the Debtor's spouse to sign the March 2000 Statement. At the trial, the parties disagreed whether the March 2000 Statement was new or was actually a copy of the April 1999 Statement.

The March 2000 Statement contained several inaccurate statements, including a representation that the Debtor owned a promissory note due from a construction project in the amount of $483,630 (Promissory Note). There was no Promissory Note. Rather, the asset shown as a Promissory Note was profit the Debtor anticipated receiving from a separate project. Most of the assets listed were not owned by the Debtor but were owned instead by one of the Debtor's closely-held businesses or by his wife's trust.

FNB did not verify the Debtor's ownership of the Promissory Note and took no assignment of the Promissory Note. The Debtor orally promised FNB he would contribute the proceeds of the Promissory Note to the Purcell Project.

In the summer of 2000, FNB granted the loan to PALI, secured by a mortgage on PALI's assets. PALI eventually defaulted. FNB foreclosed its mortgage and sued the guarantors, including the Debtor. FNB obtained default judgments against the Debtor, Cox and Poole.

In March 2004, the Debtor filed his chapter 7 petition for relief. FNB commenced an adversary proceeding seeking to have the debt excepted from the Debtor's discharge under 11 U.S.C. § 523(a)(2)(B).

At the trial, the Debtor testified that almost all of the assets listed in the March 2000 Statement were owned by his wife, her trust or the Debtor's other business entities. The Debtor explained he did not know how trust ownership worked, and he was unsure which entity owned what assets. He stated that he believed the March 2000 Statement was accurate at the time it was made, and he insisted that he did not intend to defraud FNB.

The bankruptcy court, based on the Debtor's demeanor and testimony, found the Debtor was a legally unsophisticated borrower who "did not understand the legal distinction between assets held by him individually and those held by his businesses or his wife's trust," and "believed his financial statement was substantially accurate." Findings of Fact and Conclusions of Law at 5–6, Appellant's Appendix at REC–0131–0132. The bankruptcy court concluded the Debtor did not have the requisite intent to defraud FNB. Findings of Fact and Conclusions of Law at 14, Appellant's Appendix at REC–0140.

The loan officer from FNB testified that he approved the loan based on the Promissory Note and the Debtor's oral promise to pay its proceeds to the Purcell Project. The bankruptcy court discounted the loan officer's testimony that FNB relied on the existence of the Promissory Note because FNB did nothing to verify the existence of the Promissory Note and took no assignment of the Note. The bankruptcy court stated: "[T]he Court is persuaded that a more significant factor in the Plaintiff's decision to make the loan was the inclusion of new guarantors with substantial net worth." Findings of Fact and Conclusions of Law at 7, Appellant's Appendix at REC–0133.

The bankruptcy court concluded that FNB did not actually rely on the March 2000 Statement when granting the loan. The bankruptcy court found that FNB made the loan based on the investors' guaranties and the Debtor's oral promise to pay the proceeds of the Promissory Note to the Purcell Project.

Finally, the bankruptcy court found that even if FNB relied on the March 2000 Statement, the reliance was not reasonable. Despite the inconsistent dates on the March 2000 Statement and the lack of the Debtor's wife's signature, FNB did nothing to have those errors corrected. FNB advanced a loan exceeding $2.8 million but did not verify the existence of the assets listed on the financial statement.

## II. DISCUSSION

FNB timely appealed the bankruptcy court's final judgment. Fed. R. Bankr.P. 8002(a). This Court, with the consent of the parties, has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(b)(1) and (c)(1). The parties have consented to this Court's jurisdiction because neither party has elected to have the appeal heard by the United States District Court for the Western District of Oklahoma. Fed. R. Bankr.P. 8001(e).

*Standard of Review*

A bankruptcy court's factual findings, including those concerning intent and reasonable reliance, are subject to review under a clearly erroneous standard. *Leadership Bank, N.A. v. Watson (In re Watson)*, 958 F.2d 977, 978 (10th Cir.1992); *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 788 (10th Cir. BAP 1997); Fed. R.

Bankr.P. 8013. Review under the clearly erroneous standard is significantly deferential, requiring a " 'definite and firm conviction that a mistake has been committed.' " *In re Seay,* 215 B.R. at 788, citing *Gillman v. Scientific Research Prods, Inc. of Del. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir.1995) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

■ Three issues are presented in this appeal: whether the Debtor presented the Financial Statement to FNB with the requisite intent to deceive; whether FNB actually relied on the March 2000 Financial Statement in making the loan; and whether any reliance was reasonable. FNB contends the debt should be excepted from the Debtor's discharge under 11 U.S.C. § 523(a)(2)(B) which provides:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

...

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with the intent to deceive; ....

The creditor has the burden to prove each element of the claim by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*Intent*

■ Intent to deceive may be inferred from the totality of the circumstances, including a reckless disregard for the truth. *Blue Ridge Bank and Trust v. Cascio (In re Cascio),* 318 B.R. 567, 575 (Bankr.D.Kan.2004), citing *Driggs v. Black (In re Black),* 787 F.2d 503, 506 (10th Cir.1986), *abrogated in part on other grounds by Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). A finding of reckless disregard should be very narrowly interpreted because a misrepresentation is fraudulent only if the maker "knows or believes the matter is not what he represents it to be." *Chevy Chase Bank FSB v. Kukuk (In re Kukuk),* 225 B.R. 778, 787 (10th Cir. BAP 1998), citing Restatement (Second) of Torts § 526(a) (1976).

■ The bankruptcy court found that the Debtor lacked fraudulent intent when he gave FNB the false financial statement. The bankruptcy court's findings are supported by the record. The Debtor had construction experience but did not understand the difference between a promissory note and an anticipation of profits. He was uncertain which entity owned which assets or how the titles to vehicles were held by the trust. He was unaware of the legal or practical significance of asset ownership, and the Debtor believed the March 2000 Statement was accurate. The bankruptcy court assessed the Debtor's demeanor and testimony and found him credible.

FNB attempts to turn these factual questions into legal issues. FNB's argument is twofold: the bankruptcy court erred as a matter of law when it held the Debtor only to the standard of an unsophisticated borrower; and the bankruptcy court should have applied an objective legal standard of recklessness, thereby find-

ing the Debtor acted with reckless disregard when he provided the false financial information.

First, the bankruptcy court's finding that the debtor was an unsophisticated borrower is in itself a question of fact, subject to the clearly erroneous standard of review. The record supports the bankruptcy court's finding.

Second, intent is a subjective inquiry. *McCain Foods U.S.A., Inc. v. Shore (In re Shore)*, 317 B.R. 536, 542 (10th Cir. BAP 2004) (discussion of context of § 523(a)(6)); *In re Kukuk*, 225 B.R. at 786–787 citing *Bank One Columbus, N.A. v. Schad (In re Kountry Korner Store)*, 221 B.R. 265, 272 (Bankr.N.D.Okla.1998). FNB's reliance on the case of *Central Nat'l Bank and Trust Co. v. Liming (In re Liming )*, 797 F.2d 895 (10th Cir.1986) represents a misreading of that case. In *Liming*, the Tenth Circuit Court of Appeals ruled that erroneous figures in the debtor's financial statement demonstrated the debtor's reckless disregard for the truth. *Id.* at 897. The decision was based on an inference from the facts, not an objective legal standard of recklessness.

FNB failed to prove fraudulent intent and failed to prove the Debtor acted with a reckless disregard for the truth. The bankruptcy court's findings are not clearly erroneous.

*Reliance*

The failure of FNB to establish fraudulent intent, an essential element of its claim, requires this Court to affirm the decision of the bankruptcy court. Nevertheless, FNB also argues the bankruptcy court erred when it found that FNB did not actually rely on the March 2000 Statement when it granted the loan. The bankruptcy court concluded FNB agreed to the loan because of the two additional investors, both of whom had substantial net worth, and because the Debtor orally promised to contribute funds from the Promissory Note to the Purcell Project.

To establish a claim under § 523(a)(2)(B), the Bank must show reliance in fact, i.e., that it actually relied on the financial information, and that such reliance was reasonable. *Rural Enters. of Okla. v. Watson (In re Watson)*, 294 B.R. 198, 2003 WL 21241702 *4 (10th Cir. BAP 2003), citing *Field v. Mans*, 516 U.S. 59, 68, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Ramsey Nat'l Bank and Trust Co. v. Dammen (In re Dammen)*, 167 B.R. 545, 552 (Bankr.D.N.D.1994) (creditor must show it relied on the submitted information, at least in part). While direct proof of actual reliance may be difficult, it may be proven by circumstantial evidence. *First Bank v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir.1987) (citation omitted) (abrogated on other grounds by *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351, (1995)).

When the first loan request was denied, FNB suggested the Debtor consider an investor in the Purcell Project because the Debtor lacked liquidity. Only with the involvement of the two additional investor/guarantors did FNB grant the loan. FNB did not investigate the existence of the assets on the March 2000 Statement or verify the strength of the Debtor's financial situation, despite granting a rather large loan. This Court is not left with the conviction that a mistake has been made by the bankruptcy court.

The bankruptcy court also concluded that any reliance by FNB on the March 2000 Statement was not reasonable. The Tenth Circuit Court of Appeals discussed the reasonable reliance element of § 523(a)(2)(B), stating: "[T]he reasonableness of a creditor's reliance will be evaluated according to the particular facts and

circumstances present in a given case." *In re Watson*, 958 F.2d at 978, quoting *In re Mullet*, 817 F.2d at 679. A creditor has a responsibility to ensure there exists some basis for reliance on the debtor's representations. *Id.*

Despite obvious inconsistencies in the dates on the March 2000 Statement and the failure of the Debtor's wife to sign the March 2000 Statement, FNB took no steps to have the financial statement corrected or signed. FNB did not investigate the existence of the assets the Debtor listed on the March 2000 Statement, other than to visit the project from which the Debtor expected to receive proceeds. Although FNB contends that it relied on the existence of the Promissory Note, FNB did not even verify the existence of the Promissory Note.

FNB contends the bankruptcy court held it to an investigative standard which exceeds industry standards. Regardless, the law in the Tenth Circuit requires the court to assess reliance on the basis of the facts and circumstances present in the particular case. *Id.* The loan officer's statements of reliance are contradicted by FNB's own conduct and its lack of investigation despite errors on the face of the March 2000 Statement. The bankruptcy court's inference that any reliance on the March 2000 Statement was unreasonable under the circumstances of the case was not error.

## III. CONCLUSION

The bankruptcy court's findings were not clearly erroneous and the judgment is AFFIRMED.